COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley


HELLEN BANGURA

MEMORANDUM OPINION*

v.      Record No. 2236-14-4                        PER CURIAM
                                                    JUNE 9, 2015

ALEXANDRIA DEPARTMENT
  OF COMMUNITY & HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Douglas A. Steinberg, on brief), for appellant.

(Jonathan Westreich, Special Counsel to the Alexandria Department
of Community and Human Services; James L. Banks, Jr., City
Attorney; Jill A. Schaub, Senior Assistant City Attorney; Sameena
Sabir, Guardian *ad litem* for the minor children; Office of the City
Attorney, on brief), for appellee.


Hellen Bangura (mother) appeals the orders regarding three of her children, S.K., P.B., and

I.S.[1] The circuit court terminated mother's parental rights and approved the goal of adoption for

P.B.[2] Mother argues that the trial court erred by (1) terminating her parental rights to P.B. under

Code § 16.1-283 because the evidence did not prove that she failed to rehabilitate herself within the

statutory time frame, and specifically, (A) terminating her parental rights pursuant to Code

§ 16.1-283(C)(1) because there was insufficient evidence to prove that she "failed to provide or

substantially plan for the future of the child for a period of six months after the child's placement in

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] While the foster care case was pending, mother gave birth to another child in July 2014.
That child is not a subject of these proceedings.

[2] Mother's assignments of error relate to the termination of her parental rights to P.B., so
this Court will not review the trial court's rulings for S.K. and I.S.

foster care;" (B) terminating her parental rights pursuant to Code § 16.1-283(C)(2) because there was insufficient evidence to prove that she failed to make "substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement within twelve months;" and (C) terminating her parental rights pursuant to Code § 16.1-283(B) because she made substantial progress toward correcting or eliminating the conditions that would allow the child to be returned home safely; (2) terminating her parental rights under Code § 16.1-283 "when it had elected outcomes that were less drastic, (placement with other family) than termination and had not removed or made any steps to protect [her] youngest minor child;" and (3) terminating mother's parental rights and approving the goal of adoption for P.B. and approving the goal of family placement for S.K. and I.S. because it is not in P.B.'s best interests to sever her relationship with her siblings and mother's family. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

As of August 2, 2013, mother had three children - - S.K., who was six years old, P.B., who was two years old, and I.S., who was one year old.[3] A maintenance worker discovered the children had been left alone in mother's home. The maintenance worker contacted the police, who subsequently contacted the Alexandria Department of Community & Human Services (the Department). The conditions of the home were deplorable. The house was infested with roaches, bed bugs, and mice. There was no telephone, and the children did not have a contact

---

[3] The children have different fathers.

- 2 -

number for mother.  There was limited food in the house, and hazardous chemicals, including pesticides and cleaning supplies, were within the children's reach.  There were no beds, and the bathroom and bedroom had "a strong odor."  S.K. told the social worker that she frequently cares for her siblings when her mother works and, as a result, misses school.

Mother arrived two hours after the police arrived.  She denied leaving the children home alone.  She said that she asked her roommate to watch the children because her babysitter was not available.  Mother became increasingly aggressive.  She threatened to kill herself and others.  The police detained her and transported her to receive psychiatric treatment.

The Department removed the children and placed them in foster care.  The Alexandria Juvenile and Domestic Relations District Court (the JDR court) found that the children were abused and neglected.

Due to the situation on August 2, 2013, mother was charged with six felonies and three misdemeanors.  The trial court granted her motion to strike the three counts of reckless care of a child and three counts of causing cruelty and injury to a child.  She was convicted of three counts of contributing to the delinquency of a minor.

The Department provided numerous services to mother.  They recommended that she participate in a mental health examination, which she did on September 5, 2013.  The examiner stated that mother "appears unable to function independently as a parent" and was "at high risk for child abuse and neglect."  The examiner made several recommendations, including individual psychotherapy, a psychological examination, home-based services, stable housing, and reliable childcare.  Mother subsequently participated in a psychological evaluation.  The examiner concluded that "[r]isk for child neglect is high" and that mother's "ability to effectively care for her children, make thoughtful decisions, and problem solve may be significantly compromised due to her limited comprehension abilities, depressive symptoms, and her difficulties with

emotional regulation." The examiner recommended a neuropsychology evaluation, individual psychotherapy, continued contact with her children, parenting classes, and development of her support networks. As a result of the recommendations, mother started weekly meetings with a therapist.

In February 2014, the Department placed I.S. with his father, and S.K. and P.B. with their maternal great aunt and uncle. In March 2014, S.K.'s father expressed interest in having custody of S.K.

The Department arranged for weekly supervised visitation between mother and the children. Mother attended most visitations, but had to cancel some visits due to illness and work. In September 2014, mother did not return the telephone calls from the social worker who was trying to schedule visitation. Mother did not visit with the children in September or October 2014.

The Department also assisted mother with housing. She had difficulty paying the rent, despite being employed at the time. Then, in July 2014, mother was fired from her job. Her fourth child was born in July 2014. She received financial assistance with her housing, and she also received food stamps.

On October 7, 2014, the JDR court terminated mother's parental rights to P.B. and approved the goal of adoption. It approved the permanency plan to return S.K. to her father's home[4] and I.S. to his father's home.[5] Mother appealed these orders to the circuit court.

The parties appeared before the circuit court on November 19, 2014. After hearing the evidence and argument, the circuit court found that it was in P.B.'s best interests to terminate mother's parental rights to P.B. pursuant to Code § 16.1-283(B), (C)(1), and (C)(2). The circuit

---

[4] There was a concurrent goal of adoption for S.K.

[5] I.S.'s father was awarded custody.

- 4 -

court then entered orders terminating mother's parental rights to P.B. and approving the goal of adoption. The circuit court also entered orders approving the permanency planning goals for S.K. and I.S.[6] This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

*Assignment of error #1*

Mother argues that the trial court erred in terminating her parental rights to P.B. pursuant to Code § 16.1-283(B), (C)(1), and (C)(2) because the evidence did not prove that she failed to rehabilitate herself within the statutory time frame.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

---

[6] Counsel for S.K.'s father filed a letter requesting that this Court affirm the trial court's ruling regarding S.K. Mother did not assign error to that ruling, so this Court will not review it.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department removed the children from mother's care due to inadequate supervision and the fact that S.K. missed school to take care of her siblings. There also was concern about the condition of the home and the presence of pesticides within the children's reach. The Department provided numerous services to mother. However, mother was unable to remedy the situation that led to P.B. being placed in and remaining in foster care. At the time of the circuit court's hearing, mother was unemployed. She had been receiving rental assistance for approximately one year, and that assistance was expiring. Her lease also was ending on November 30, 2014, and she did not have a plan for where she was going to live or how she was going to pay for it.

The Department cancelled two visits in October 2014 because "[t]here were concerns about Ms. Bangura's mental and emotional stability at the time of the scheduled visits." After the children were removed, the Department arranged for mother to have a mental health interview and a psychological examination. In both reports, there was concern about mother's ability to parent. The examiners predicted a high risk of child neglect. Despite mother's involvement with a therapist, the social worker testified that mother still "gets very easily overwhelmed and when she is faced with a problem or situation that is not to her liking[,] she can get extremely emotional and is not able to rationalize or make a plan in those moments."

The social worker testified that mother had not made the progress necessary to have P.B. returned to her. "The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886,

889 (2003). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

At the time of the circuit court's hearing, P.B. had been in foster care for approximately fifteen months. Mother had not substantially remedied the conditions that led to P.B. being placed and remaining in foster care. The trial court did not err in terminating mother's parental rights to P.B. pursuant to Code § 16.1-283(C)(2).

When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the trial court erred in terminating mother's parental rights to P.B. pursuant to Code § 16.1-283(B) and (C)(1).

*Assignment of error #2*

Mother argues that the trial court erred in terminating her parental rights to P.B. because mother still had custody of her infant at the time of the circuit court hearing. As noted above, mother had a fourth child in July 2014 and, as of November 2014, the child was still in her custody. Mother notes that the social worker "conceded she could care for an infant, and in fact was doing so at the time of the hearing." Mother asserts that her parental rights to P.B. should not have been terminated because the Department did not have concerns about her ability to care for the infant. At the time of the hearing, the Department was monitoring the situation between mother and the infant. In its brief, the Department states that the "situation has subsequently

changed." However, the custodial arrangement with the infant does not affect mother's ability to care for P.B. The evidence proved that mother was unable to remedy the situation within twelve months to care for P.B.

*Assignment of error #3*

Mother argues that termination of her parental rights to P.B. and the goal of adoption are not in P.B.'s best interests because the different outcomes for S.K., I.S, and P.B. may mean that P.B. loses contact with her siblings.

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The evidence proved that P.B. needed permanency, and adoption was the best way to achieve permanency for P.B. Contrary to mother's arguments, the trial court did not err in determining P.B.'s best interests.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.